CASPER L. LEACH v. HIRAM FRANCIS AND MERRITT F. WOOD, APT.*

HIRAM FRANCIS v. CASPER L. LEACH AND JOEL CLEMONS, APTS.*

*Trespass. Officer. Authorized Person. Service of Process. Resistance.*

The law is perfectly well settled in this state that to render a sale of property void as to creditors, both the vendor and vendee must participate in the intent to delay the creditors of the vendor, at least to the extent of the vendee's having knowledge of such intent on the part of the vendor.

A person specially authorized to serve process has no authority except that conferred by his deputation; he is entitled to and can claim no respect, consideration or obedience by reason of his being in a public position until he makes his authority known, or until it *is* known to those with whom he is dealing; and until then the owner of property, which the authorized person is undertaking to attach and carry away, may treat him as a mere trespasser and protect it against him. But if he resist, having such knowledge, and the authorized person is injured by him, he is liable in an action of trespass for an assault and battery.

*Heard at the January term, 1868.

L, an officer, accompanied by C, the execution creditor, had attempted to levy upon a mare which F, the debtor, had sold to W and had been resisted by F and W and the mare escaped during the affray, and afterward W mounted her and rode off. L then directed C to take hold of F and hold him while he went after W and the mare, which C did. *Held,* that, as the execution did not run against F's body and as he did not interfere or threaten to interfere with L's going after the mare, this imprisonment of F was a trespass, and having been done by C by L's direction, both were liable for it.

BOTH actions were actions of trespass for an assault and battery, and were originally commenced before a justice of the peace and came to the county court on the appeal of the defendants in each case. At the September term, 1865, both cases were referred to the determination of a referee. At the March term, 1866, the referee returned and filed his report, and in the case of *Francis* v. *Leach* and *Clemons*, the plaintiff filed exceptions to the report, and in the case of *Leach* v. *Francis* and *Wood*, the defendants filed exceptions. On the hearing upon the report and exceptions at the March term, 1866, KELLOGG, J., presiding, the court overruled the exceptions in the case of *Francis* v. *Leach* and *Clemons*, and rendered judgment for the defendants, to which decision and judgment the plaintiff excepted. And in the case of *Leach* v. *Francis* and *Wood*, the court overruled the exceptions and rendered judgment for the plaintiff to recover ten dollars for his damages, to which decision and judgment the defendants excepted.

Both causes were tried together by the referee, and upon the same facts and evidence, which were embraced in one report, which was as follows:

" On the 8th day of May, 1863, Casper L. Leach was authorized to serve an execution herewith returned in favor of Joel Clemons *v.* Hiram Francis, and by direction of the plaintiff's attorney in said execution he went to Wells and there found Francis in the field and informed him that he had said execution and demanded the pay thereon. The said Francis neglecting and refusing to pay the same, said Leach informed said Francis that he was directed to take and should levy upon a certain mare of the defendant Francis, and said Francis replied that the mare had been taken from the place for the last time upon a writ of execution, and that said Leach could not take her; said Leach proposed to Francis to give him a receipt for property and to give him time to procure one, which was declined by Francis, but said Francis did offer to turn out sheep of sufficient value to secure said execu-

tion, which said Leach declined to take and proceeded to take said mare, and started in the direction where the mare was standing, (which was in the field within a short distance of the place where the parties were,) and Francis started at the same time toward the mare and arrived there first and took off the harness and drove her off out of the lot and to the barn of one Wood at a distance of about half a mile from the place where the mare was at the time Leach started after her.

Leach then called upon Joel Clemons, the creditor in said execution, to assist him in securing said mare, and they immediately proceeded to the barn of said Wood, and on their arrival there, found said mare in the barn, and Merritt Wood, one of the defendants in the suit Leach v. Francis et al., in the act of giving her some hay; Francis was at the same time in the rear of the barn within hearing; Leach was about to take said mare, and so informed Wood; Wood then informed him that she was his property, and he must not take her. Leach told him, Wood, that if he owned the mare he had a legal remedy and he had better give her up and make his claim at law; but Wood declined to give her up, and called in Francis. At the time Wood had his halter on the mare, and Leach and Clemons had another halter with them. Leach went toward the mare and was in the act of taking her, when Wood and Francis interferred to prevent him. Wood told Leach that he must not take his halter, and Leach replied thst he would cut it off or take it off; when about to cut·or remove the halter, a scuffle ensued, in which all the parties were engaged, not in assaulting each other, but in seizing hold of the mare both around her neck and by the halter. Leach got off Wood's halter and put on his, and Wood and Francis got off Leach's or Clemons' halter. In the act of taking Leach's halter out of his hand, Francis slightly broke the skin on Leach's hand, but the injury was trifling. Before the mare left the barn, Leach directed Clemons to take hold of Francis and hold him, which he did. In the scuffle both halters were removed from the mare and she left the barn and went out into the meadow and to a gate by the highway, where the parties overtook her, and a further struggle ensued; and the gate was opened and Wood jumped upon the mare's back and rode her into Francis' lot. On the way there and in the highway, Francis, Leach and Clemons were together, and Leach directed Clemons to take hold of Francis and hold him there till he went up into the lot to get the mare, and Clemons did so, using no more force than was judged necessary for that purpose. Leach went into the lot where Wood was with the mare, and after a conversation between them, Wood gave up the

mare to Leach, and they returned together. Francis was released. Leach took another colt from the barn of Francis, and took them to a place of safe-keeping. It appeared in evidence that when the mare went to Wood's barn, Francis, upon his arrival at the barn, made a trade with Wood, to trade off the mare to him for a colt Wood had there using and a note against a third person, which note was not delivered to Francis. The mare was put into the barn by Wood, and Francis, at the time of the arrival of Leach and Clemons, was at the place where the horse he traded for was, and was about taking the colt out of the team. I do not find this to have been a *bona fide* trade on the part of Francis, but there was no evidence to show that Wood knew of the attempted attachment at the time the trade was made, but the testimony before me was that he knew nothing of it. There was evidence tending to show that Leach, up in the lot, where he took the mare from Wood, agreed in case he, Wood, would give up the mare, it should settle the whole matter; but this evidence was contradicted, and from all the evidence in the case I do not find such settlement. If from the foregoing facts, Leach and his assistant Clemons, were acting under legal authority, and entitled to the rights and protection of a proper legal officer, I find that the defendants Francis and Wood are guilty, and find for the plaintiff Leach to recover the sum of ten dollars damages and his cost, in said suit of Leach v. Francis and Wood; but if said Leach and Clemons are not entitled to such protection, then I find for the defendants Francis and Wood to recover their cost. And in the case of Francis v. Leach and Clemons, if the defendants were acting under proper legal authority, I find for the defendants to recover their costs, otherwise I find for the plaintiff to recover the sum of ten dollars damages and his cost."

The following exceptions to the report were filed in both cases:

1. Because it was and is a material question as to whether said Joel Clemons used an excess of force upon the person of said Francis, at the time said Leach was in pursuit of said mare, as mentioned in said report, and the referee has failed to find the same in any other way than the statement in said report, that the said Clemons " used no more force than was judged necessary," etc.

2. Because in other respects said report is insufficient, uncertain and informal.

*C. C. Dewey*, for Francis, plaintiff, and for Francis and Wood, defendants.

43

*J. B. Bromley*, for Leach, plaintiff, and for Leach and Clemons defendants.

The opinion of the court was delivered by

PIERPOINT, C. J.   The questions involved arise upon the report of a referee.

The first question that naturally arises is, whether the mare, that was the subject of the controversy between the parties, became the property of Wood as the result of the sale to him by Francis, as against the creditors of Francis.  The referee finds that Francis made the sale to keep the mare from being attached ; but he also finds that Wood purchased the mare without any knowledge of the object of Francis, and in good faith.  The law is perfectly well settled in this state, that to render a sale of property void as to creditors, both the vendor and vendee must participate in the intent to delay the creditors of the vendor, at least to the extent of the vendee's having knowledge of such intent on the part of the vendor.  This being so, we think, upon the facts reported, the mare became the property of Wood, both as against Wood and his creditors, Wood being in the possession of her.

Wood being the owner of the mare, had the legal right to protect his property against any person that had no legal authority to take her from him.   Leach, the plaintiff, had an execution against Francis, on which he was seeking to attach the mare ; he was not a public officer, but was specially authorized to serve said execution; he had no authority except that conferred by such deputation ; he was entitled to no respect, consideration or obedience by reason of his being in any public position ; he could claim nothing in this respect until he made his authority known, or until it *was* known to those with whom he was dealing.   In attempting to take possession of the mare, when Wood informed him that the beast was his property and manifested a disposition to defend it, if he would avail himself of the immunities that attach to public officers in the execution of process, he should at once have made known his authority, and that he was acting under it ; until he did this, Wood had the right to treat him as a mere trespasser, and to protect his property against him.   See

WILLIAMS, C. J., in *Burton* v. *Wilkinson*, 18 Vt., 186. Again, it does not appear from the report that the plaintiff sustained the slightest injury at the hands of Wood. If the plaintiff was injured by Francis, Wood is not responsible for it, as he, Wood, was only doing what he had a legal right to do, being ignorant of the plaintiff's authority.

In respect to Francis the case is different. He knew that the plaintiff was acting under authority; he knew he had no right, even under Wood, to resist the plaintiff in taking the property; he knew that the plaintiff had the execution and was authorized to serve it. Wood can justify himself for the acts of Francis, though done by his directions, on the ground of ignorance of the plaintiff's authority; but Francis, knowing of the plaintiff's authority, can not justify under Wood on the same ground. As it appears that in the affray the plaintiff sustained some slight injury at the hands of Francis, he is entitled to a judgment against him therefor.

The result is, the judgment in this case is reversed, and judgment entered for the plaintiff against Francis for the sum reported by the referee and costs, and judgment in favor of Wood against the plaintiff for his costs.

In *Francis* v. *Leach and Clemons*, heard at the same time and upon the same report as to facts, it appears that during the affray in the barn the mare escaped. Wood afterward got on to her and rode off. Leach directed Clemons to take hold of Francis and hold him while he went after Wood and the mare; this Clemons did. We can see no reason or excuse for this act. It does not appear that Francis interfered with Leach's going after the mare, or attempted to, or threatened to. Why he should have thought it necessary to imprison Francis while he went after the mare I do not see. His execution did not run against Francis's body. This act was a trespass, and having been done by Clemons by Leach's directions, both are liable for it.

In this case the judgment of the county court is reversed, and judgment for the plaintiff for the amount reported by the referee and costs.