ADELINE TILLISON *v.* FRED TILLISON.

January Term, 1922.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed February 9, 1922.

*Fraudulent Conveyances—Actual Fraud—Fraud in Law—Payment of Debt in Full Before Due.*

1. In a suit to have a transfer of money from plaintiff's deceased husband to defendant declared fraudulent and void as to her as widow and as creditor of her husband's estate, a finding that the deceased paid the money for the purpose of providing for the care and support of his mother, which he was legally and morally bound to provide, and that he had no intention to defraud the plaintiff, negatives the charge of actual or intentional fraud.

2. Fraud is never presumed, and one seeking to set aside a conveyance on the ground that it was fraudulent must establish that fact clearly and conclusively.

3. The transfer was not fraudulent in law as against plaintiff's claim as a creditor of her husband's estate, because, at the time the money was paid to the defendant, her husband had an estate remaining sufficient to pay all his debts, including her claim.

4. The fact that a debtor is unable to pay all who have claims upon him in full does not make fraudulent his payment of one creditor in full.

5. A debtor may always pay his debt, though not due, if the creditor will take his money, without violating the statute against fraudulent conveyances.

APPEAL IN CHANCERY. Bill to have a transfer of money from plaintiff's deceased husband to the defendant declared fraudulent and void as to her as widow and as creditor of her husband's estate. Heard on findings of fact by the Chancellor after the March Term, 1919, Chittenden County, *Wilson*, Chancellor. Decree for the defendant. The plaintiff appealed. The opinon states the case.

*V. A. Bullard* and *C. P. Cowles* for the plaintiff.

*M. G. Leary* for the defendant.

MILES, J. The plaintiff in this case is the widow of Orrin Tillison, and the defendant is his brother-in-law and cousin. A short time previous to the death of Orrin, December 7, 1914, he delivered to the defendant eighteen hundred dollars which the defendant claimed was paid him for caring for and supporting the mother of Orrin and of the wife of the defendant, and of another son by the name of Jed P. Tillison. This bill is brought to have the transfer of this money from Orrin to the defendant declared fraudulent and void as to the plaintiff as widow of Orrin, and as creditor of his estate, and for an accounting.

The case was heard by the chancellor, facts were found, and on such facts the chancellor dismissed the bill. To this action of the chancellor the plaintiff appeals, and the question arises: Do the findings support the decree of dismissal?

No exceptions were taken to the findings of the chancellor, nor to the evidence from which they are made. Both parties claim that the findings support their several contentions, and the plaintiff insists that the chancellor erred in not rendering a decree in her favor, and in rendering a decree dismissing the bill.

The chancellor has found, in substance, the following facts: On January 10, 1898, L. S. Tillison and Elizabeth Tillison, father and mother of Orrin, Jed P., and the wife of the defendant, conveyed to Jed P. all their property by a conditional deed, wherein it was provided for the care and support of the old people, by Jed P., during the remainder of their lives and for a Christian burial upon their death. In 1900 L. S. Tillison died. Jed P. failed to carry out the condition of the deed, and he made an oral arrangement or trade with Orrin whereby Orrin was to take over the care and support of the mother.

Several years previous to the time Orrin paid the eighteen hundred dollars to the defendant, and after he had assumed the care of his mother, she resided at the defendant's and was there cared for by the defendant several months in each year; that for this care the defendant had no intention of charging anything, nor did he charge anything to any one for such care.

[1, 2]　The chancellor further finds that since the eighteen hundred dollars was paid to the defendant he has continuously cared for the mother and was caring for her at the time of the trial of this case in the court below; that Orrin, when he paid the money to the defendant, had. no intention to defraud the plaintiff of any money or property, but deemed his obligation due to others greater than to the plaintiff, in view of the situation, and that he paid to the defendant the eighteen hundred dollars for the purpose of providing for the care and support of his mother thereafter, during her life, and for her proper burial expenses, as well as to reimburse the defendant for past care and support of his mother.

This finding eliminates from the case the charge of actual or intentional fraud. The remaining question is whether the findings support the charge of fraud in law. The law in no case presumes fraud. One who seeks to set aside a conveyance on the ground that the conveyance was fraudulent must establish that fact clearly and conclusively. The presumption is always in favor of innocence and not of guilt. "In no doubtful matter does the court lean to the conclusion of fraud." *Darling, Admr.* v. *Ricker,* 68 Vt. 471, 35 Atl. 376.

[3]　The fraud claimed by the plaintiff is that the payment of the eighteen hundred dollars to the defendant was for the purpose of defeating her of her marital rights and her rights as a creditor against the estate of her husband. We need spend no time on the claim that the payment δf the money to the defendant was fraudulent in law as against the plaintiff's claim as a creditor of her husband's estate; for the facts found by the chancellor abundantly show that, at the time the money was received by the defendant, Orrin had an estate remaining sufficient to pay all his debts, including the plaintiff's claim, and there is no claim but that the evidence fully supports this finding. *Wilbur* v. *Nichols et al.,* 61 Vt. 432, 18 Atl. 154.

· The question remaining is: Do the facts found establish "clearly and conclusively" that the arrangement between Orrin and the defendant respecting the care of the mother, and the payment of the eighteen hundred dollars to the defendant, was fraud in law of the plaintiff's marital rights?

As already stated, when Orrin arranged with the defendant to care for his mother during her life and to give her a Christian burial at her death, he was under a legal, as well as a moral,

obligation to see that his mother had such support and burial. He, in other words, was her debtor. To relieve himself of that obligation he entered into this arrangement with the defendant. Under that arrangement with Orrin, the defendant is the only one now who is bound to support the mother to the end of her life, and after that to give her a Christian burial.

The plaintiff relies upon authorities where the contract is between the party to be supported and the one to furnish the support. But it should be borne in mind that this case presents a different question than such a case. There, if the one to be supported parts with his property for future support, without reserving estate sufficient to pay his creditors, the contract is regarded as fraudulent in law, though no fraud is intended, and the contract, upon further proceedings being brought, will be set aside to the extent of satisfying the demands of creditors applying for such relief. But here no question is or can be raised but that the contract to support the mother was binding upon Orrin at the time he paid the money to the defendant, and was enforceable against him by the mother, and the defendant under the contract with Orrin is now legally bound to carry out that contract.

The fact that the liability transferred was a liability for support and maintenance is of no significance. The question presented would be the same if the liability transferred was for the performance of some other duty.

If the eighteen hundred dollars had been given by the mother to the defendant for her support in the future and *her* creditors were seeking to set aside that contract, those authorities might be in point. But, as we have already seen, such is not the situation. The question arises over the contract for the performance of that contract.

This case, therefore, differs widely from the cases relied upon by the plaintiff. If the defendant cannot be held for the mother's future support and burial, none other can be, and, without fault on her part, she would be deprived of her right under a valid and binding contract.

[4, 5] Being legally bound to support his mother, Orrin had the legal right to provide for that support by furnishing it himself personally or by another and no one had the right to complain, if his mother was satisfied, and the contract for such support was reasonable and without fraud or fraudulent intent.

While it is true, as claimed by the plaintiff, that a wife has and should have a tangible and valuable interest in her husband's estate and property, such interest can require no greater protection from fraud than that of a creditor and certainly does not prevent the husband from paying his honest debts and meeting his honest obligations. As long as he has means to do so, it is his duty to perform faithfully every contract made by him; but this does not prevent his payment of one creditor in full, though he is unable to pay all who have claims upon him, to that extent. *Gregory* v. *Harrington,* 33 Vt. 241; *Darling, Admr.* v. *Ricker, supra.*

The payment of a debt before it is due, with intent to aid the payee in his purpose of preventing his creditor from trusteeing the debt, is not within the statute against fraudulent conveyances, agreements, etc. "The debtor may always pay his debt, though not due, if the creditor will take his money," without subjecting himself to the charge of having violated the statute. *Chamberlin* v. *Pillsbury and Trustee,* 35 Vt. 16.

Being bound to provide for his mother, he could do so, notwithstanding he may have wished to place the eighteen hundred dollars beyond the reach of the plaintiff. *Marsh* v. *Davis,* 24 Vt. 363. In the latter case the payee of a note delivered it to the maker in exchange for a new note payable to his brother, who was surety on the debt of the payee. This was done by the payee, who was insolvent at the time, for the purpose of securing his brother on his liability as surety, and to avoid being trusteed in a suit against the maker. It was held that this arrangement did not fall within the statute, as the payee had the right to prefer his surety as against his other creditors.

The plaintiff having failed to secure a finding that the contract sought to be set aside was fraudulent, in fact as well as in law,

*the decree below is affirmed and the cause is remanded.*