# Raymond S. Rose and Mary Elizabeth Rose v. George Palmer Morrell and Martha Morrell

[259 A.2d 8]

No. 16-68

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 7, 1969

*Arthur L. Graves*, St. Johnsbury, for Plaintiffs.

*Robert A. Magoon*, Hyde Park, for Defendants.

**Holden, C.J.** The plaintiffs are judgment creditors of the defendant George Palmer Morrell. Morrell was formerly married to the plaintiffs' daughter. This proceeding in the court of chancery was instituted under 12 V.S.A. §§ 2808–2810 in aid of an execution held by the plaintiffs. The objective of the action is to reach real property, known as the Sanborn Farm in Stowe, Vermont, which was deeded to the defendants as tenants by the entirety in 1958. The claim is that the joint title and estate held by the defendants is in fraud of the plaintiffs.

The cause was heard by the chancellor in February 1968. It was contested by the defendant Martha alone. The plaintiffs' prior motion to take the bill as confessed against George had been granted in December 1966. The facts are extensively reported. The decree, which followed, denied equitable relief against Martha and dismissed the complaint as to her. The decree also dismissed her cross-bill which sought declaratory relief to establish the validity of a subsequent conveyance of the Sanborn Farm by warranty deed of her husband to her, as grantee, dated October 2, 1962. The plaintiffs appealed.

The title of the Sanborn Farm is tangled in the thicket of George Morrell's matrimonial problems. He purchased the farm on March 10, 1944 during the time of his marriage to his first wife Elizabeth Morrell. This marriage was dissolved by divorce in 1951. About that time George gave a mortgage to Elizabeth.

George married the plaintiffs' daughter Therese the same year. This marriage terminated in 1953. In the aftermath of that divorce George was arrested in Florida in an action instituted by Therese to recover for payments due for the support of their daughter Melinda.

On August 16, 1954, George executed a warranty deed of the Sanborn Farm to Murray and Beatrice Goldberg of Miami, Florida. The chancellor has determined that the deed was in fact a mortgage to partly secure the Goldbergs for providing bail to obtain his release from arrest in the Florida action for support of Melinda.

George and his co-defendant Martha were married on September 7, 1957. At the time of their marriage, other than his interest in the Sanborn Farm and an old automobile, George had no property. The defendant Martha had assets of approximately $8,500.

Sometime prior to November 1958, the participating sureties in George's bail bond caused George to be arrested without warrant in Cincinnati. He was taken to Florida and committed to jail. As a result of these events, George brought an action against his sureties which was later settled for an amount in excess of $36,000.

On November 4, 1958, Murray and Beatrice Goldberg reconveyed the Sanborn Farm to the defendants as tenants by the entirety. Subject to the plaintiffs' exception, the lower court found the consideration for this transfer was the discharge of the Florida bail bond on which the Goldbergs were sureties.

■ The estate of the wife and the husband's interest in her tenancy by the entirety, if validly created, is protected from the husband's sole creditors. *Town of Corinth* v. *Emery*, 63 Vt. 505, 508, 22 A. 618. The plaintiffs, as later creditors of the husband, maintain that the interest in the Sanborn Farm which the Goldberg deed conveyed to Martha, was in fraud of creditors and should be held to respond to their claim.

The findings tell us that the plaintiffs were awarded custody of Melinda on September 9, 1959. They became judgment creditors of George on April 30, 1963. On that date they were awarded a "compensatory fine" in a proceeding against their former son-in-law issued by the Circuit Court in Dade County, Florida. .

■ The decree *pro confesso* against George does not establish his fraudulent intent as to Martha's interest in the subject matter of the present action. The implied admission arising from a decree by default does not bind a codefendant who appears and contests the litigation. *The Mary* (U.S.) 9 Cranch 126, 3 L.Ed. 678, 684; 30 Am.Jur., Judgments § 223; 49 C.J.S., Judgments § 191(b).

. There is a broad finding to the effect that "the defendant George Morrell at all times material, displayed an interest to contest and avoid his obligations with respect to alimony and

support money" due his first wife Elizabeth and in regard to the custody and support of his daughter Melinda. There is no showing however that this general disposition on his part motivated the creation of Martha's interest as a tenant by the entirety in the conveyance by the Goldbergs.

His obligation to Elizabeth was secured by a prior mortgage on the property and Martha's interest was subject to that encumbrance. There is evidence, undisputed, that the conveyance to Goldbergs, in the first place, was made to secure the bond given to protect Therese Morrell for Melinda's support. And the court specifically found that the consideration for the deed from the Goldbergs was their discharge of the bond upon which the grantors were sureties. This finding is not challenged. Thus, as to George, we are not dealing with a voluntary conveyance, for the deed was given for valuable consideration. And there is no showing that these transactions were fraudulently detrimental to the claims of either of his divorced wives as existing creditors.

The plaintiffs contend that the conveyance was voluntary as to Martha. They excepted to the chancellor's failure to find in accordance with their request for such a finding. Compliance with this request was not required by the evidence and the court did not err in its denial.

There is substantial evidence that during any of the years 1958 through 1960 George earned less than $3,000 from employment as a hotel clerk and part-time teacher in a private school. His wife Martha had substantial earnings as an industrial nurse and as a reserve officer with the Army Nurse Corps in the rank of major. At the time of the deed from the Goldbergs she had advanced more than six thousand dollars for his use and benefit. Subsequent loans and advancements in his behalf exceed forty thousand dollars.

Martha testified that her interest, as a grantee in the Goldberg deed, was conveyed in consideration of prior loans and advancements which she had made to her husband. Her evidence on this point was not directly refuted. In the situation that prevailed at the time of this conveyance it was not necessarily dishonest for the grantees to accept the return of George's remaining equity in the Sanborn Farm as tenants by the entirety.

 If the husband's debt to his wife is an honest one, it is not fraudulent in law for him to prefer to secure her claim over those of other creditors. *Holstein* v. *Blanchette*, 108 Vt. 30, 35, 182 A. 289; *Drew* v. *Corliss*, 65 Vt. 650, 655, 27 A. 613. Moreover, the plaintiffs, as subsequent creditors with notice of Martha's interest, are in no position to complain that they were hindered, delayed or defrauded by a tenancy created long before their obligation accrued. As later creditors, their burden of proof is not discharged by suspicious circumstances. Constructive fraud will not take away her interest in the property. The fraud must be actual and intentional to avoid a voluntary conveyance that was prior to their claim. *Schreyer* v. *Scott*, 134 U.S. 405, 10 S.Ct. 579, 33 L.Ed. 955, 958; 37 Am.Jur.2d, Fraudulent Conveyances § 144; annotation 32 A.L.R.2d at 91.

 Notwithstanding the consideration for the Goldberg deed originated with George, the creation of Martha's tenancy is also supported by legally sufficient consideration. In this phase of the conveyance his posture is that of a grantor. Thus giving full weight to the chancellor's finding that George displayed an intent to avoid his obligation to his prior wives, his fraudulent purpose in itself will not destroy Martha's estate as his grantee.

"The consideration was valuable and adequate in the eyes of the law,—and consequently, in order to make the conveyance fraudulent there must have been a fraudulent intent on the part of both grantor and grantee." *In the Matter of Savage*, 112 Vt. 89, 93, 22 A.2d 153 (citing *Ludlow Savings Bank & Trust Co.* v. *Knight*, 92 Vt. 171, 173, 102 A. 51 and *Holstein* v. *Blanchette, supra*, 108 Vt. 30, 35 182 A. 289). Accord, *Tillison* v. *Tillison*, 95 Vt. 535, 536, 116 A. 117; *Wilson* v. *Spear*, 68 Vt. 145, 148, 34 A. 429; *McLane* v. *Johnson*, 43 Vt. 48, 55.

As in the *Matter of Savage*, we cannot presume that this was the case. Neither could the chancellor. Accordingly, the statement in his findings to the effect that he could not find actual fraud by the defendant Martha, is well founded in the record. His determination that the plaintiffs failed to establish fraud on her part in the conveyance which created her interest in the Sanborn Farm settles the question.

Much of the record is consumed in an extensive analysis of this defendant's participation in her husband's evasion of the custodial orders of the Florida court concerning Melinda and his contumacious conduct in an ancillary *habeas corpus* proceeding in Ohio in 1962. Martha was also put to an exhaustive accounting of the disposition of the $36,000 received by her husband in settlement of his action for false arrest. The chancellor found that all but $9,507.28 was properly accounted for. A substantial portion of the fund was expended to settle the claim of his first wife Elizabeth for alimony and attorneys' fees.

At the time the plaintiffs' petition for *habeas corpus* was being heard in Ohio, October 2, 1962, the defendant George Morrell executed a deed of his interest in the Sanborn Farm to Martha. This was done two days before he absconded with his daughter Melinda in defiance of the Ohio Court. See *Rose* v. *Morrell*, 174 Ohio St. 427, 189 N.E.2d 873. In this departure he left the home where he and Martha resided and apparently has never returned. The deed was not recorded until May 1963.

Nearly all of these events and transactions occurred several years subsequent to the Goldberg deed. To be sure, they tend to support the plaintiffs' version of the case, but they are insufficient to override the chancellor's determination on the contested issue of fact committed to him for decision. The court's decree in dismissing the plaintiffs' complaint is supported by the evidence and is sound in law.

The cross complaint of the defendant Martha Morrell, seeking to confirm the validity of the deed from George in 1962, was also dismissed. We think rightly so. Apparently this result was based on the incapacity of husband and wife to accomplish such a conveyance, *inter se*. See *First National Bank of Montpelier* v. *Bertoli*, 87 Vt. 297, 304, 89 A. 359.

■ The defendants' claim of error in this aspect of the decree is based on the theory of mistake in the drafting of the deed from George to Martha. If so, this is a matter between the parties to the deed and foreign to the main controversy presented in the plaintiffs' bill. There are no findings to support affirmative relief in behalf of Martha and it is not

available to her by way of collateral benefit to the disposition of the cause in chief.

*Decree affirmed.*